IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

KRISTINA M. WISE                                                    PLAINTIFF

            v.                      Civil No. 10-2201

MICHAEL J. ASTRUE, Commissioner of
Social Security Administration                              DEFENDANT

## MEMORANDUM OPINION

### I.    Factual and Procedural Background

Plaintiff, Kristina M. Wise, brings this action seeking judicial review, pursuant to 42 U.S.C.

§ 405(g), of a decision of the Commissioner of the Social Security Administration ("Commissioner")

denying her application for supplemental security income ("SSI") under Title XVI of the Social

Security Act ("the Act").

Plaintiff protectively filed her SSI application on January 29, 2008, alleging disability as of

December 14, 2006, due to bipolar disorder, depression, anxiety, insomnia, back pain, hand pain,

and migraines.  Tr. 38, 66, 112-113, 116-117, 144, 152.  On the application date, Plaintiff was thirty

one years old with a tenth grade education.  Tr. 33-34, 73, 140.  She has no past relevant work.  Tr.

73.

Plaintiff's application was denied at the initial and reconsideration levels.  Tr. 80-83, 89-90.

At Plaintiff's request, an administrative hearing was held on July 23, 2009.  Tr. 27-60.  Plaintiff was

present at this hearing and represented by counsel.  The ALJ rendered an unfavorable decision on

January 22, 2010, finding Plaintiff was not disabled within the meaning of the Act.  Tr. 63-74.

Subsequently, the Appeals Council denied Plaintiff's Request for Review on October 28, 2010, thus

making the ALJ's decision the final decision of the Commissioner.  Tr. 1-3.  Plaintiff now seeks judicial review of that decision.

II.  **Medical History**

Plaintiff received routine family care from Terry Hoyt, D.O., at Van Buren Family Clinic. Tr. 215-218, 232-235, 324-331.  On January 28, 2008, Plaintiff presented with complaints of bipolar disorder (by history), anxiety, depression, back and neck pain, and body aches.  Tr. 216.  She took no medications.  Tr. 216.  On examination, Dr. Hoyt noted nervous tremor of the extremities and paracervical tissue texture changes with notable tender points.  Tr. 216-217.  He diagnosed Plaintiff with bipolar affective disorder with predominant depression and associated psychomotor retardation, generalized anxiety disorder, and cervical, thoracic, and lumbar somatic dysfunction.  Tr. 217.  Dr. Hoyt prescribed Geodon, Cymbalta, and Xanax.  Tr. 217-218.

At a follow-up appointment in February 2008, Dr. Hoyt noted that Plaintiff was much better and was grateful that she could emotionally function again.  Tr. 215.  However, she did report continual back pain, and Dr. Hoyt noted marked tenderness in Plaintiff's neck and spine.  Tr. 215. Dr. Hoyt found that Plaintiff's bipolar and anxiety disorders were stable and much improved.  Tr. 215.  He prescribed Naproxen and Lorcet for pain.  Tr. 215.  In March 2008, Plaintiff stated she was doing much better and was not nearly as depressed.  Tr. 327.  She also stated her lower back pain was not constant anymore.  Tr. 327.  After having an allergic reaction to Geodon, which resulted in an emergency room visit, Plaintiff was started on Lamictal and Seroquel.  Tr. 237-244, 325-326.  In June 2008, Dr. Hoyt noted Plaintiff had a rough month and diagnosed her with fibromyalgia.  Tr. 233.  Follow-up notes reveal that Plaintiff was feeling better and sleeping well.  Tr. 324.  Dr. Hoyt gave Plaintiff samples of Soma for her back pain and muscle tightness.  Tr. 324-325.

-2-

On June 30, 2008, Dr. Hoyt completed a Medical Source Statement ("MSS"), in which he determined Plaintiff could sit/stand/walk for a maximum of two hours each in an eight-hour workday, but could walk and stand for no more than three hours combined. Tr. 329. He determined Plaintiff could frequently lift up to ten pounds and occasionally up to twenty pounds, and frequently carry up to five pounds and occasionally up to twenty pounds. Tr. 330. Dr. Hoyt found Plaintiff could perform simple grasping, but could do no pushing or pulling, fine manipulation, or repetitive foot movements. Tr. 330. He found Plaintiff could occasionally bend, squat, and kneel, but never crawl, climb, reach above her head, stoop, or crouch. Tr. 330. Dr. Hoyt determined Plaintiff could occasionally operate automotive equipment and be exposed to moving machinery, noise, dust, fumes, and gases, but could never be exposed to unprotected heights or marked temperature changes. Tr. 330. He noted redness, muscle spasms, and spinal deformity, and found Plaintiff was in moderate to severe pain. Tr. 331. He further determined Plaintiff would need unscheduled breaks and would miss more than four workdays per month as a result of her impairments. Tr. 331.

On April 16, 2008, Plaintiff saw Diane Brandmiller, Ph.D., for a consultative mental examination. Tr. 225-231. Plaintiff described a history of mood swings, periods of low and high energy, depression, anxiety, and conflict with others. Tr. 225-226. She reportedly attempted suicide in 2000 and last had suicidal thoughts a month prior to the interview. Tr. 226. Plaintiff was taking Xanax, Geodon, Lorcet, and Cymbalta. Tr. 226. She stated Xanax helped her anxiety, but she did not notice much difference from the other medications. Tr. 226. Side effects were reported as dizziness and drowsiness. Tr. 226. Plaintiff admitted drinking six or seven glasses of tea and four liters of caffeinated soda daily. Tr. 227.

When asked about work history, Plaintiff stated she was fired from her job delivering meals on wheels in July 2007.  Tr. 227.  She reportedly got into a physical altercation with her boyfriend's daughter-in-law and had stitches above her eye.  Tr. 227.  She was no longer able to drive, so she was terminated.  Tr. 227.  In 2003, she was terminated from her job at a furniture store for absenteeism.  Tr. 227.

On examination, Plaintiff appeared depressed and somewhat lethargic.  Tr. 228.  Thought processes were logical, relevant, and goal-directed.  Tr. 228.  Plaintiff appeared to be of average intelligence.  Tr. 229.  Dr. Brandmiller diagnosed Plaintiff with bipolar I disorder, most recent episode depressed, and gave her a Global Assessment of Functioning ("GAF") score of 51-60.  Tr. 229.  She determined Plaintiff's symptoms did not meet the criteria for intermittent explosive disorder, panic disorder, or agoraphobia.  Tr. 229.  Dr. Brandmiller found that Plaintiff could interact in a socially appropriate manner and comprehend simple instructions, or complex instructions if written down.  Tr. 230.  Plaintiff's short-term memory was adequate and she was able to attend and sustain concentration and persist in completing tasks.  Tr. 230.  She showed no significant psychomotor slowing and was able to perform mental tasks without delay.  Tr. 231.  Dr. Brandmiller noted that although Plaintiff reported having anxiety attacks when she left home, she appeared relaxed during the interview.  Tr. 231.  She noted no obvious signs of malingering or exaggeration. Tr. 231.

In a Psychiatric Review Technique Form ("PRTF") dated April 21, 2008, Winston Brown, an agency specialist, considered Listing 12.04 (affective disorders), but determined Plaintiff had mild restriction of activities of daily living, moderate difficulties in maintaining social functioning, moderate difficulties in maintaining concentration, persistence, or pace, and no episodes of

decompensation.  Tr. 248-261.  In a Mental Residual Functional Capacity Assessment ("RFC"), Brown found moderate limitations in Plaintiff's ability to carry out detailed instructions, maintain attention and concentration for extended periods, sustain an ordinary routine without special supervision and without being distracted by others, complete a normal workday and work week without interruptions from psychologically based symptoms, perform at a consistent pace without an unreasonable number and length of rest periods, accept instructions and respond appropriately to criticism from supervisors, respond appropriately to changes in the work setting, and set realistic goals or make plans independently of others.  Tr. 262-265.  Brown found no significant limitations in the twelve remaining work-related categories.  Tr. 264.  He concluded that Plaintiff was capable of performing unskilled work.  Tr. 264.

III.   **Applicable Law**

The Court's role on review is to determine whether the Commissioner's findings are supported by substantial evidence in the record as a whole.  *Ramirez v. Barnhart*, 292 F.3d 576, 583 (8th Cir. 2003).  "Substantial evidence is less than a preponderance, but enough so that a reasonable mind might accept it as adequate to support a conclusion."  *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002) (quoting *Johnson v. Apfel*, 240 F.3d 1145, 1147 (8th Cir. 2001)).  In determining whether evidence is substantial, the Court considers both evidence that detracts from the Commissioner's decision as well as evidence that supports it.  *Craig v. Apfel*, 212 F.3d 433, 435-36 (8th Cir. 2000) (citing *Prosch v. Apfel*, 201 F.3d 1010, 1012 (8th Cir. 2000)).  If, after conducting this review, "it is possible to draw two inconsistent positions from the evidence and one of those positions represents the [Secretary's] findings," then the decision must be affirmed.  *Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007) (quoting *Siemers v. Shalala*, 47 F.3d 299, 301 (8th Cir. 1995)).

To be eligible for disability insurance benefits, a claimant has the burden of establishing that she is unable to engage in any substantial gainful activity due to a medically determinable physical or mental impairment that has lasted, or can be expected to last, for no less than twelve months. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); 42 U.S.C. § 423(d)(1)(A).  The Commissioner applies a five-step sequential evaluation process to all disability claims: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment that significantly limits her physical or mental ability to perform basic work activities; (3) whether the claimant has an impairment that meets or equals a disabling impairment listed in the regulations; (4) whether the claimant has the RFC to perform her past relevant work; and (5) if the claimant cannot perform her past work, the burden of production then shifts to the Commissioner to prove that there are other jobs in the national economy that the claimant can perform given her age, education, and work experience.  *Pearsall*, 274 F.3d at 1217; 20 C.F.R. § 404.1520(a), 416.920(a).  If a claimant fails to meet the criteria at any step in the evaluation, the process ends and the claimant is deemed not disabled.  *Eichelberger v. Barnhart*, 390 F.3d 584, 590-91 (8th Cir. 2004).

## IV.    Discussion

At step one, the ALJ determined Plaintiff had not engaged in substantial gainful activity at any point since January 29, 2008, the application date.  Tr. 68.  At step two, the ALJ found Plaintiff suffers from fibromyalgia, caffeine overuse, migraine headaches, bipolar affective disorder, and generalized anxiety disorder, all of which were considered severe impairments under the Act.  Tr. 68-70.  At step three, he determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment.  Tr. 70-71.  At step four, the ALJ

found Plaintiff had the RFC to lift/carry fifty pounds occasionally and twenty five pounds frequently, sit/stand/walk for about six hours during an eight-hour workday, understand, remember, and carry out simple, routine, and repetitive tasks, respond appropriately to supervisors and usual work situations, and have only occasional contact with coworkers and no contact with the general public. Tr. 71-72.

Since the ALJ determined Plaintiff had no past relevant work, he continued to step five. Tr. 72-74. After receiving vocational expert testimony, the ALJ found jobs existing in significant numbers in the national economy that Plaintiff could perform.[1] Tr. 73-74. Accordingly, the ALJ determined Plaintiff was not under a disability from January 29, 2008, the application date, through January 22, 2010, the date of the decision. Tr. 73-74.

Plaintiff contends the ALJ erred by: (1) failing to find her back pain severe; (2) improperly determining her RFC; and (3) improperly discrediting her subjective complaints. *See* Pl.'s Br. 14-20. The court disagrees.

A. Severe Impairments

Step two of the regulations involves a determination, based on the medical evidence, of whether the claimant has an impairment or combination of impairments that is severe. *See* 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). A severe impairment is one that significantly limits a claimant's physical or mental ability to perform basic work activities. 20 C.F.R. § 404.1520(c); *see Owens v. Barnhart*, 109 Fed. Appx. 825, 826-827 (8th Cir. 2004) (to be considered severe, an impairment must limit ability to do basic work activities). Although the claimant has the burden of

---

[1] The ALJ determined Plaintiff could perform the requirements of representative medium, unskilled occupations such as janitor, of which there are 11,000 jobs regionally and 1,000,000 jobs nationally, groundskeeper, of which there are 1400 jobs regionally and 154,000 jobs nationally, and dishwasher, of which there are 800 jobs regionally and 196,000 jobs nationally. Tr. 73.

-7-

establishing a severe impairment or impairments, the burden at this stage is not great. *Caviness*, 250 F.3d at 605.

Substantial evidence supports the ALJ's step two analysis. Plaintiff received very little treatment for back pain during the relevant time period. Tr. 215-218, 233, 324-327. Dr. Hoyt diagnosed Plaintiff with cervical, thoracic, and lumbar somatic dysfunction and osteoarthritis of the spine/chronic back syndrome. Tr. 217, 233. He prescribed pain medication and muscle relaxers, which provided some pain relief. Tr. 69, 215, 324-325, 327; *Estes v. Barnhart*, 275 F.3d 722, 725 (8th Cir. 2002) (impairments that can be controlled with treatment or medication are not considered disabling). Notably, Dr. Hoyt never ordered x-rays or imaging studies of Plaintiff's spine, nor did he recommend physical therapy or refer Plaintiff to an orthopedist. Moreover, at the administrative hearing, Plaintiff's attorney readily admitted that although Plaintiff experienced back and neck pain, her psychological impairments were her "major problems." Tr. 31-32.

In determining a claimant's RFC, the ALJ must consider the combined effects of all severe *and* non-severe impairments. 20 C.F.R. § 404.1545(a)(2). Therefore, although the ALJ did not find Plaintiff's back pain to be severe, he went on to consider the effects of this impairment on Plaintiff's overall functioning. As such, the undersigned finds no error in the ALJ's step two analysis.

B.  RFC Determination

Plaintiff contends the ALJ should have given more weight to the opinion of Dr. Hoyt over the opinions of Dr. Brandmiller and the agency consultants. Pl.'s Br. 16-18. At the fourth step of the evaluation, a disability claimant has the burden of establishing his or her RFC. *Eichelberger*, 390 F.3d at 591; *Masterson v. Barnhart*, 363 F.3d 731, 737 (8th Cir. 2004). A claimant's RFC is the most she can do despite her limitations. 20 C.F.R. § 404.1545(a)(1). The ALJ determines a

claimant's RFC based on "all relevant evidence, including medical records, observations of treating physicians and others, and the claimant's own descriptions of his or her limitations." *Masterson*, 363 F.3d at 737. The Eighth Circuit has stated that "a claimant's residual functional capacity is a medical question." *Lauer v. Apfel*, 245 F.3d 700, 704 (8th Cir. 2001). Thus, although the ALJ bears the primary responsibility for determining a claimant's RFC, there must be "some medical evidence" to support the ALJ's determination. *Eichelberger*, 390 F.3d at 591; *Dykes v. Apfel*, 223 F.3d 865, 867 (8th Cir 2000).

A treating physician's opinion is given controlling weight if it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in a clamant's record. *Tilley v. Astrue*, 580 F.3d 675, 679 (8th Cir. 2009); 20 C.F.R. § 404.1527(d)(2). The record must be evaluated as a whole to determine whether the treating physician's opinion should be controlling. *Reed v. Barnhart*, 399 F.3d 917, 920 (8th Cir. 2005). A treating physician's evaluation may be disregarded where other medical assessments "are supported by better or more thorough medical evidence, or where a treating physician renders inconsistent opinions that undermine the credibility of such opinions." *Id.* at 920-21 (quoting *Prosch*, 201 F.3d at 1013). In any case, an ALJ must always "give good reasons" for the weight afforded to the treating physician's opinion. 20 C.F.R. § 404.1527(d)(2).

In this instance, the ALJ properly rejected Dr. Hoyt's restrictive MSS as inconsistent with his own treatment records as well as the medical evidence as a whole. *Krogmeier v. Barnhart*, 294 F.3d 1019, 1023 (8th Cir. 2002) (a treating physician's opinion is entitled to less weight when inconsistent and contrary to the medical evidence as a whole). Dr. Hoyt's treatment notes reveal that Plaintiff's bipolar disorder, depression, and anxiety markedly improved with medication. Tr. 215,

324-325, 327; *See Kisling v. Chater*, 105 F.3d 1255, 1257 (8th Cir. 1997) (impairments that can be controlled with treatment or medication are not considering disabling). By February 2008, Plaintiff was "grateful" that she could "emotionally function again." Tr. 215. Dr. Hoyt determined that Plaintiff's depression and bipolar disorder were stable and much improved. Tr. 215. After having a "rough month" in June, Dr. Hoyt prescribed new medications. Tr. 233, 325-326. Follow-up notes reveal that Plaintiff was doing much better and sleeping well. Tr. 324. Dr. Hoyt's treatment notes also show that pain medication and muscle relaxers improved Plaintiff's back pain. Tr. 327.

It is the ALJ's function to resolve conflicts among various treating and examining physicians. *Estes v. Barnhart*, 275 F.3d 722, 725 (8th Cir. 2002). Here, Dr. Brandmiller and the agency consultants found moderate limitations in Plaintiff's work-related abilities. Dr. Brandmiller determined that Plaintiff could interact in a socially appropriate manner and comprehend simple instructions. Tr. 230. She noted that Plaintiff's short term memory was adequate and she was able to attend and sustain concentration and persist in completing tasks. Tr. 231. She diagnosed Plaintiff with bipolar I disorder and gave her a GAF score of 51-60, which is suggestive of moderate impairment in social, occupational, or school functioning. DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS, 34 (4th ed., 2000). Similarly, Dr. Brown, an agency specialist, found moderate limitations in Plaintiff's work-related abilities, but determined she was capable of unskilled work. Tr. 262-265. These assessments are consistent with each other and with the medical evidence of record. As such, the ALJ did not err in adopting these opinions over Dr. Hoyt's overly restrictive and inconsistent MSS.

Plaintiff's contentions regarding the ALJ's hypothetical question merely reiterate her RFC argument. *See* Pl.'s Br. 17-18. A hypothetical question posed to the VE is sufficient if it sets forth

impairments supported by substantial evidence and accepted as true by the ALJ.  *Goff v. Barnhart*, 421 F.3d 785, 794 (8th Cir. 2005) (citing *Hunt v. Massanari,* 250 F.3d 622, 625 (8th Cir. 2001)). Here, the ALJ's hypothetical to the VE was proper, as it mirrored the limitations adopted by the ALJ. *Roe v. Chater*, 92 F.3d 672, 676 (8th Cir. 1996).  The ALJ may properly exclude, as he did in this instance, any alleged limitation or impairments he rejects as untrue or unsubstantiated.  *Hunt v. Massanari*, 250 F.3d 622, 625 (8th Cir. 2001).  Accordingly, substantial evidence supports the ALJ's RFC determination.

C.  Subjective Complaints

Plaintiff alleges the ALJ improperly dismissed her subjective complaints.  *See* Pl.'s Br. 18-20.  When evaluating a claimant's subjective allegations, the ALJ must consider all evidence relating to: (1) the claimant's daily activities; (2) the duration, frequency and intensity of the pain; (3) any precipitating and aggravating factors; (4) the dosage, effectiveness and side effects of medication; and (5) any functional restrictions.  *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984).  The ALJ "may not discount a claimant's allegations of disabling pain solely because the objective medical evidence does not fully support them."  *Medhaug v.* Astrue, 578 F.3d 805, 816 (8th Cir. 2009) (quoting *Goff*, 421 F.3d at 792).  However, subjective complaints may be discounted if there are inconsistencies in the medical evidence as a whole.  *Id.* A court "will not disturb the decision of an ALJ who considers, but for good cause expressly discredits, a claimant's complaints of disabling pain."  *Gonzales v. Barnhart*, 465 F.3d 890, 895 (8th Cir. 2006) (quoting *Goff*, 421 F.3d at 792).

Contrary to Plaintiff's assertion, the ALJ properly considered her subjective complaints and dismissed them for legally sufficient reasons.  The ALJ cited Plaintiff's lack of formal mental health treatment as evidence that her limitations were not of disabling severity.  Tr. 72; *Hutton v. Apfel*, 175

-11-

F.3d 651, 655 (8th Cir. 1999) (claimant failed to maintain a consistent treatment pattern for her alleged mental impairments); *Davis v. Barnhart*, 197 Fed. Appx. 521, 522 (8th Cir. 2006) (ALJ properly considered medical records, lack of treatment, and failure to take prescription pain medication when discounting her subjective complaints). Additionally, Plaintiff reported significant improvement with her medications. Tr. 215, 217-218, 327, 324; *see Medhaug*, 578 F.3d at 816 (an impairment is not considered disabling if it is adequately controlled with medication); *Hutton* at 655 ("impairments that are controllable or amenable to treatment do not support a finding of total disability"). Finally, the ALJ noted inconsistencies in Plaintiff's testimony concerning her past work history, effectiveness of treatment, and symptoms. Tr. 72; *see McCoy v. Astrue*, 648 F.3d 605, 614 (8th Cir. 2011) (claimant's complaints of disabling pain were inconsistent with observations from treating and consultative physicians).

It is well-settled that an ALJ need not explicitly discuss each *Polaski* factor; it is "sufficient if he acknowledges and considers those factors before discounting a claimant's subjective complaints." *Heino v. Astrue*, 578 F.3d 873, 881 (8th Cir. 2009) (quoting *Strongson v. Barnhart*, 361 F.3d 1066, 1072 (8th Cir. 2004)). Here, the ALJ cited the proper standard, considered the factors in conjunction with Plaintiff's testimony, and then properly discounted Plaintiff's subjective complaints. *Gates v. Astrue*, 627 F.3d 1080, 1082 (8th Cir. 2010) ("we defer to an ALJ's credibility determinations if they are supported by valid reasons and substantial evidence"). For these reasons, substantial evidence supports the ALJ's credibility determination.

## V.   <u>Conclusion</u>

Having carefully reviewed the record, the undersigned finds that substantial evidence supports the ALJ's determinations at each step of the disability evaluation process, and thus the

-12-

decision should be affirmed.  Accordingly, Plaintiff's complaint should be dismissed with prejudice.

IT IS SO ORDERED this 21st day of December 2011.


/s/ J. Marschewski
HONORABLE JAMES R. MARSCHEWSKI
CHIEF UNITED STATES MAGISTRATE JUDGE